**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**MICROMAT CO., INC. and ERWIN EIBERT,**

                                        **Plaintiffs,**

        **vs.**                                                **1:10-cv-508**
                                                               **(MAD/RFT)**

**CATSKILL MOUNTAIN BREWING CO., INC.,**
**RICHARD RAUCH, HARRY RHULEN and JOHN**
**BORWICK,**

                                        **Defendants.**
_____

**APPEARANCES:**                         **OF COUNSEL:**

**WEINBERG & GERONTIANOS**                **DAN L. JOHNSTON, ESQ.**
116 West 23rd Street, #500
New York, New York 10011
Attorneys for plaintiffs

**BLATCHLY & SIMONSON, P.C.**             **BRUCE D. BLATCHLY, ESQ.**
P.O. Box 280
3 Academy Street
New Paltz, New York 12561
Attorneys for defendants

**Mae A. D'Agostino, U.S. District Judge:**

### MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

On April 29, 2010, Plaintiffs filed their initial complaint in this breach of contract action.

On February 28, 2011, Defendants filed a motion for judgment on the pleadings.  On May 11,

2011, the Court issued a Memorandum-Decision and Order directing Plaintiffs to file an amended

complaint within twenty (20) days, providing "enough facts to state a claim to relief that is

plausible on its face." *See* Dkt. No. 16 at 7 (citation omitted).

Currently before the Court is Defendants' motion for judgment on the pleadings as to Plaintiffs' amended complaint.

## II. BACKGROUND

Plaintiff Micromat Company, Inc. ("Micromat") is a New Jersey corporation and Plaintiff Erwin Eibert is a New Jersey resident. *See* Dkt. No. 17 at ¶ 1. Plaintiff Eibert is the principal owner and chief operating officer of Plaintiff Micromat. *See id.* Plaintiff Micromat is the successor in interest of the Pub Brewing Company, a New Jersey corporation. *See id.* Defendant Catskill Mountain Brewing Company ("Catskill") is a New York corporation and Defendants Richard Rauch, Harry Rhulen, and John Borwick are residents of New York, Colorado, and Minnesota, respectively. *See id.* at ¶ 2.

Plaintiffs manufacture and sell equipment for brewing beer, and Defendants own and operate a restaurant in New Paltz, New York. *See id.* at ¶ 5. Defendants produce and sell beer in their restaurant using brewery equipment provided by Plaintiffs. *See id.*

In 1997, Defendants solicited Plaintiffs' assistance in developing their restaurant and subsequently agreed to purchase equipment from Plaintiffs for the production of beer. *See id.* at 6. Through an oral agreement, Defendants agreed to purchase and Plaintiffs agreed to provide brewery equipment with a fair market value of $310,000. *See id.* at ¶¶ 7, 11. Plaintiffs provided the equipment and Defendants continue to use this equipment in their restaurant. *See id.* at ¶ 8. Defendants orally agreed to provide fair market value for the equipment provided by Plaintiffs. *See id.* at ¶ 9. Plaintiffs claim that, despite their demands, "Defendants have provided only $160,000 and a shareholder interest in their company for the purchase and use of the equipment provided by the Plaintiffs." *See id.* at ¶ 10.

2

In 2008, Plaintiffs determined that the "shares in the [D]efendant corporation had no present real value to support the value provided to the Defendants by the Plaintiffs." *See id.* at ¶ 12. Plaintiffs claim that Defendants did not provide them with any Certificates of Shares or any benefit of share ownership, such as dividends. *See id.* at ¶ 13. Therefore, Plaintiffs allege that they began to have discussions with Defendants to "recover the balance due of approximately $140,000 on the original agreement." *See id.* at ¶ 12.

Plaintiffs further allege that Defendant Rauch, acting for Defendant Catskill and its officers and principal owners, orally agreed with Plaintiff Eibert "to pay the balance due of $150,000 plus interest for a total of $175,000" to Plaintiffs. *See id.* at ¶ 14. In return, Plaintiffs allegedly agreed to "forfeit their interest in the Defendant corporation and all other claims against the Defendants." *See id.* at ¶ 15. Plaintiffs allege that Defendants have failed to perform, and have thereby breached their oral agreement to provide Plaintiffs with $175,000 to satisfy the balance of the purchase price for the brewery equipment. *See id.* at ¶ 16.

In their amended complaint, Plaintiffs allege a breach of contract and a conversion cause of action. *See* id. at ¶¶ 12-20.


### III. DISCUSSION

#### A.      Standard of Review

The Rule 12(c) standard for judgment on the pleadings is essentially the same as the standard that courts apply to a motion to dismiss under Rule 12(b)(6). *See Johnson v. Rowley*, 569 F.3d 40, 43-44 (2d Cir. 2009) (quotation omitted). A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the party's claim for relief. *See Patane v. Clark*, 508 F.3d 106, 111-12 (2d Cir. 2007). In

considering the legal sufficiency, a court must accept as true all well-pleaded facts in the pleading and draw all reasonable inferences in the pleader's favor. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (citation omitted). This presumption of truth, however, does not extend to legal conclusions. *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-50 (2009) (citation omitted). Although a court's review of a motion to dismiss is generally limited to the facts presented in the pleading, the court may consider documents that are "integral" to that pleading, even if they are neither physically attached to, nor incorporated by reference into, the pleading. *See Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002)).

To survive a motion to dismiss, a party need only plead "a short and plain statement of the claim," Fed. R. Civ. P. 8(a)(2), with sufficient factual "heft to 'sho[w]' that the pleader is entitled to relief[,]'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (quotation omitted). Under this standard, the pleading's "[f]actual allegations must be enough to raise a right of relief above the speculative level," *see id.* at 555 (citation omitted), and present claims that are "plausible on [their] face," *id.* at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 129 S. Ct. at 1949 (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" *Id.* (quoting [*Twombly*, 550 U.S.] at 557, 127 S. Ct. 1955). Ultimately, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," *Twombly*, 550 U.S. at 558, or where a plaintiff has "not nudged [its] claims across the line from conceivable to plausible, the[ ] complaint must be dismissed[,]" *id.* at 570.

4

**B.      Statute of frauds**

In their complaint, Plaintiffs allege that Defendant Rauch, acting for Defendant Catskill and its officers and principal owners, agreed to pay Plaintiffs the balance due of $150,000, plus interest, for a total of $175,000.  *See* Dkt. No. 17 at ¶ 14.  In return and in consideration for this payment, Plaintiffs agreed to "forfeit their interest in the Defendant corporation and all other claims against Defendants."  *See id.* at ¶ 15.  All agreements among the parties were oral.  *See id.* at ¶ 11.  Defendants contend that this alleged oral agreement is unenforceable because of New York's statute of frauds set forth in General Obligations Law § 5-703.  *See* Dkt. No. 20 at 10.

"'Under New York law, parties are free to enter into a binding contract without memorializing their agreement in a fully executed document.'"  *Spencer Trask Software & Info. Servs. LLC v. RPost Intern. Ltd.*, 383 F. Supp. 2d 428, 449 (S.D.N.Y. 2003) (quoting *Winston*, 777 F.2d at 80).  New York does, however, require certain agreements to be in writing.  *See id.* (citation omitted).

For example, New York General Obligations Law § 5-703 provides as follows: "A contract for the leasing for a longer period than one year, or for the sale, of any real property, or an interest therein, is void unless the contract or some note or memorandum thereof, expressing the consideration, is in writing, subscribed by the party to be charged, or by his lawful agent thereunto authorized by writing."  N.Y. Gen. Oblig. Law § 5-703(2).  "Real property" is defined as being "co-extensive in meaning with lands, tenements and hereditaments."  N.Y. Gen. Oblig. Law § 5-101(3).  Moreover, General Obligations Law § 5-701 requires agreements that cannot be performed within a year to be in writing.  *See* N.Y. Gen. Oblig. Law § 5-701.

In support of its position that General Obligations Law § 5-703 bars Plaintiffs' claim, Defendants rely on *Watkins v. Clark*, 260 A.D.2d 843 (3d Dep't 1999).  In *Watkins*, the court held

that the plaintiff's cause of action alleging breach of an oral sales contract to buy a business he ran in a leased building "should have been dismissed pursuant to the principles of General Obligations Law § 5-703(2). *See id.* at 846. The *Watkins* decision is the only decision the Court has been able to locate in which section 5-703 was applied to a transaction of this nature. The alleged agreement in *Watkins* was for the sale of the business, not the leased premises in which the business was located. As such, the transaction was not for the sale of real property, but the business' supplies and good will. Accordingly, this decision appears to be an aberration that the Court declines to follow.

The other cases cited by Defendants involved oral agreements for the sale of stock in a corporation, "the sole asset of which was an interest in realty," which the court found was unenforceable because of section 5-703. *See, e.g., Yenom Corp. v. 155 Wooster St. Inc.*, 33 A.D.3d 67, 70-71 (1st Dep't 2006) (citations omitted); *Bergman v. Krausz*, 19 A.D.3d 186, 186-87 (1st Dep't 2005) (holding that "[i]nasmuch as the transaction involved the sale of stock in corporations whose sole asset was a commercial building, the statute of frauds (General Obligations Law § 5-703(2)) was applicable" (citations omitted)). Unlike those cases, however, the alleged oral agreement in the present matter was not for a sale of stock of a corporation whose "sole asset" was an interest in realty. Here, the alleged oral contract was for the sale of stock in a corporation that runs a restaurant and brewery, assets that clearly comprise much of the value in the stock.

Although not discussed by the parties, the Court believes that the alleged oral agreement disputed by the parties is more appropriately described as a contract for the purchase of a security. In 1997, New York repealed section 8-319 of its Uniform Commercial Code which set forth a statute of frauds for the sale of securities. *See* N.Y. U.C.C. § 8-113. As amended, the statute now

provides that "a contract or modification for the sale or purchase of a security is enforceable whether or not there is a writing signed or record authenticated by a party against whom enforcement is sought, even if the contract or modification is not capable of performance within one year of its making." *Id.* Moreover, section 8-103 of New York's Uniform Commercial Code provides that "[a] share or similar equity interest issued by a corporation, business trust, joint stock company, or similar entity is a security." N.Y. U.C.C. § 8-103(a). The Official Comment to section 8-103 explains that "Subsection (a) establishes an unconditional rule that ordinary corporate stock is a security. That is so whether or not the particular issue is dealt in or traded on securities exchanges or in securities markets. Thus, shares of closely held corporations are Article 8 securities." *Id.*

It is undisputed that Defendant Catskill is a New York corporation. *See* Dkt. No. 17 at ¶ 2. Moreover, the amended complaint provides that Plaintiffs were provided a shareholder interest in Defendant Catskill and that the alleged oral contract involved Defendants agreeing to purchase Plaintiffs' interest in Defendant Catskill. *See id.* at ¶¶ 10, 14-15. As such, the Court finds that Plaintiffs have pled sufficient facts to demonstrate that this alleged oral agreement is not barred by New York's statute of frauds.

C.    **Sufficiency of the alleged oral contract**

Defendants contend that Plaintiffs' allegations that Defendant Rauch, acting for all of the Defendants, agreed to repurchase his stock in the corporation for $175,000 is too indefinite to enforce. *See* Dkt. No. 20 at 11. In making this argument, Defendants rely almost exclusively on Plaintiff Eibert's deposition testimony. *See id.*

To form a contract, there must be an objective meeting of the minds and a manifestation of

mutual assent "'sufficiently definite to assure that the parties are truly in agreement with respect to

all material terms.'"  *Tractebel Energy Mktg., Inc. v. AEP Power Mktg., Inc.*, 487 F.3d 89, 95 (2d

Cir. 2007) (quoting *Express Indus. & Terminal Corp. v. N.Y. State Dep't of Transp.*, 93 N.Y.2d

584, 589, 693 N.Y.S.2d 857, 715 N.E.2d 1050 (1999)).  "[A] mere agreement to agree, in which a

material term is left for future negotiations, is unenforceable."  *Tractebel Energy Mktg.*, 487 F.3d

at 95 (citation omitted).  Price and compensation are examples of material terms that require

definiteness.  *See Major League Baseball Props., Inc. v. Opening Day Prods., Inc.*, 385 F. Supp.

2d 256, 271 (S.D.N.Y. 2005) (citation omitted).  In addition, a party's subjective belief as to what

was agreed to or intended is not controlling.  *See Rosoff v. Mountain Laurel Ctr. for the*

*Performing Arts*, 317 F. Supp. 2d 493, 499 (S.D.N.Y. 2004) (citation omitted).

Contrary to Defendants' assertions, Plaintiffs have sufficiently pled the existence of an

oral contract.  Plaintiffs allege that "Defendant Richard Rauch, acting for the Defendant

Corporation and its officers and principal owners, agreed with the Plaintiff Eibert to pay the

balance due of $150,000 plus interest for a total of $175,000 to the Plaintiffs," and that, in

consideration for this, "Plaintiffs agreed to forfeit their interest in the Defendant corporation and

all other claims against the Defendants."  *See* Dkt. No. 17 at ¶¶ 14-15.  Although certain

omissions from an alleged contract can render the contract unenforceable, New York law is clear

that "[t]he fact that the alleged oral agreement may not have contained a specified time for

performance does not constitute a form of indefiniteness that would, at this pleadings stage,

warrant dismissal on that basis."  *Held v. Kaufman*, 91 N.Y.2d 425, 432 (1998) (citations

omitted).  Plaintiffs have pled a sufficiently definite oral contract to survive Defendants' motion

for judgment on the pleadings.  *See Granite Partners, L.P. v. Bear, Stearns & Co. Inc.*, 58 F.

Supp. 2d 228, 252 (S.D.N.Y. 1999) (denying the defendant's motion to dismiss the plaintiff's breach of an oral contract claim and noting that the nature of such claims often make them more appropriate for disposition at summary judgment).

If the Court was permitted to rely on Plaintiff Eibert's deposition testimony, as Defendants urge the Court to do, it may conclude that this alleged agreement lacked the requisite objective meeting of the minds to form a binding contractual agreement. In a motion for judgment on the pleadings, however, the Court is limited to the allegations contained in the complaint, exhibits attached thereto, and documents that are "integral" to the complaint, even though not necessarily attached to the complaint. Plaintiff Eibert's deposition testimony is not "integral" to the complaint and not properly considered on a motion for judgment on the pleadings, and the Court declines to convert the present motion into a motion for summary judgment. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 154 (2d Cir. 2002) (citations omitted).

Based on the foregoing, the Court finds that Plaintiffs have plausibly pled their breach of contract cause of action; and, therefore, the Court denies Defendants' motion as to this cause of action.

**D.     The Conversion Claim**

Plaintiffs allege in their second cause of action that Defendants' acceptance of their brewery equipment and continued use of it, without providing Plaintiffs with its "reasonable value," constitutes a conversion by Defendants of Plaintiffs' equipment. *See* Dkt. No. 17 at ¶ 18. Plaintiffs further allege that, as a result of this conversion, Defendants have improperly earned revenue from the use of Plaintiffs' property and that Plaintiffs have not been subsequently compensated. *See id.* at ¶¶ 19, 20. In their motion, Defendants argue that Plaintiffs' conversion

claim must fail because Plaintiffs received full compensation for the brewery equipment and because the claim is barred by the three-year statute of limitations applicable to conversion claims in New York. *See* Dkt. No. 20 at 12.

It is uncontested that Defendants took possession of the brewery equipment in 1997. *See* Dkt. No. 17 at ¶¶ 6, 8; Dkt. No. 18 at ¶ 6. Defendants' possession was the result of an oral agreement between Defendants and Plaintiffs, whereby Plaintiffs agreed to provide the brewery equipment in exchange for "fair market value of $310,000." *See id.* at ¶¶ 7, 11. Defendants allegedly only provided Plaintiff with $160,000 and a shareholder interest in their company, in exchange for the brewery equipment.

In New York, an action for conversion accrues on the date the conversion occurs. *See* N.Y. C.P.L.R. § 214(3); *see also Davidson v. Fasanella*, 269 A.D.2d 351, 352 (2d Dep't 2000) (citations omitted). Since it is uncontested that Defendants took possession of the brewery equipment in 1997, Plaintiffs' action to recover damages for conversion is barred by New York's three-year statute of limitations applicable to conversion actions. *See* N.Y. C.P.L.R. § 214(3). Therefore, Plaintiffs' conversion claim is untimely.

Based on the foregoing, the Court grants Defendants' motion for judgment on the pleadings as to Plaintiffs' conversion cause of action.

# IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Defendants' motion for judgment on the pleadings is **GRANTED in part** and **DENIED in part**; and the Court further

**ORDERS** Plaintiffs' conversion cause of action is **DISMISSED**; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision

and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: May 23, 2012
      Albany, New York

Mae A. D'Agostino
U.S. District Judge